ALSTOM POWER, INC. *v.* BALCKE-DURR, INC.
(SC 17106)

Sullivan, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

Argued February 10—officially released June 15, 2004

*Ben A. Solnit*, with whom, on the brief, was *Gerald T. Giaimo*, for the appellant (plaintiff).

*Richard F. Wareing*, with whom were *Timothy T. Corey* and, on the brief, *Gary F. Sheldon*, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. This appeal arises out of the trial court's judgment denying the petition filed by the plaintiff, Alstom Power, Inc., to dissolve a bond substituted for a mechanic's lien filed by the defendant, Balcke-Durr, Inc. Following a hearing, the trial court concluded that, because the parties finalized the agreement at issue in this case after October 1, 1999, General Statutes § 42-

158*l* (a),[1] which nullifies lien waiver provisions in construction contracts created on or after October 1, 1999, applied to nullify the mechanic's lien waiver signed by the defendant. On appeal to this court, the plaintiff claims that the trial court improperly: (1) shifted the burden of proof to the plaintiff in derogation of General Statutes § 49-37 (b) (5)[2] by not requiring the defendant first to show probable cause to sustain the mechanic's lien; and (2) applied the parol evidence rule to exclude extrinsic evidence of conduct that would have established that the parties' agreement had been formed prior to October 1, 1999, and therefore was within the purview of § 42-158*l* (a). The defendant maintains that the plaintiff explicitly waived its right to have the defendant proceed first at trial and further contends that the trial court properly excluded the extrinsic evidence pursuant to the parol evidence rule.[3] We agree with the defen-

---

[1] General Statutes § 42-158*l* (a) provides: "Any provision in a construction contract or any periodic lien waiver issued pursuant to a construction contract that purports to waive or release the right of a contractor, subcontractor or supplier engaged to perform services, perform labor or furnish materials under the construction contract to (1) claim a mechanic's lien, or (2) make a claim against a payment bond, for services, labor or materials which have not yet been performed and paid for shall be void and of no effect."

[2] General Statutes § 49-37 (b) (5) provides: "Upon the hearing held on the application or motion set forth in this subsection, the obligee on the bond shall first be required to establish that there is probable cause to sustain the validity of the lien. Any person entitled to notice under subdivision (1) of this section may appear, be heard and prove by clear and convincing evidence that the validity of the lien should not be sustained or that the amount of the lien claimed is excessive and should be reduced. Upon consideration of the facts before it, the court or judge may: (A) Deny the application or motion if probable cause to sustain the validity of the lien is established; or (B) order that the bond is void if (i) probable cause to sustain the validity of the lien is not established, or (ii) by clear and convincing evidence, the invalidity of the lien is established; or (C) order the amount of the bond reduced if the amount of the lien is found to be excessive by clear and convincing evidence."

[3] The defendant also raises the following alternate grounds for affirmance: (1) that § 49 of the parties' long-term supply agreement provided that Swiss law exclusively governs their agreement and, under Swiss law, a prospective lien waiver made in a construction contract is not enforceable; (2) that the lien waiver provision contained in § 19.2 of the supply agreement is defective

dant on both claims, and we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On July 5, 1998, ABB Power Generation, Ltd., a Swiss corporation and the predecessor in interest of the plaintiff, entered into a long-term supply agreement (supply agreement) with Balcke-Durr GmbH, a German corporation and the predecessor in interest of the defendant.[4] The supply agreement functioned as an umbrella agreement; it created no project-specific contractual obligations, but set certain standards and parameters relating to equipment that the defendant, as the supplier, would manufacture and supply to the plaintiff for use in several power plant construction projects that the plaintiff was to undertake. The supply agreement did not obligate the plaintiff to purchase any equipment from the defendant. Section 6.1 of the supply agreement provided that an obligation to purchase equipment would be established by a purchase order issued by the plaintiff that was to be signed and returned by the defendant.[5] Section 1 of the supply agreement also defined the following terms specifically: "[1] 'Acknowledgement' shall mean the

---

in that it does not identify specifically the property to which it applies; and (3) that the lien waiver provision does not bar the defendant's lien rights against the owners of the property on which the plaintiff's project was to be constructed. Because we affirm the judgment of the trial court, we do not need to consider these alternate grounds.

[4] Although the supply agreement was executed by the parties' predecessors in interest, references herein to the parties' obligations under the supply agreement are to the plaintiff and the defendant.

[5] Section 6.1 of the supply agreement provides in relevant part: "In any event, [the plaintiff] shall have the right to accept or reject any proposal made by the [defendant] in response to [the plaintiff's] request for quotation without incurring any liability whatever to the [defendant]. This Agreement shall not imply or create an obligation for both Parties to enter into any Purchase Order(s).

"Should [the plaintiff] accept the [defendant's] proposal, such acceptance shall remain conditioned upon [the plaintiff] and the [defendant] executing a Purchase Order on terms to be mutually agreed upon . . . ."

[defendant's] final acceptance of the Purchase Order(s). [2] 'Agreement' shall mean the Long Term Supply Agreement and Purchase Order(s) setting forth the Works,[6] including all Documents incorporated therein by reference . . . [and] [3] 'Purchase Order' shall mean the Document issued by [the plaintiff] and entitled 'Order', by which the Agreement come[s] into effect and force." The supply agreement also contained the following lien waiver provision, set forth in § 19.2: "[The defendant] hereby waives for himself, his successors in interest and assigns, and for all subcontractors, vendors, suppliers, etc., their successors in interest and assigns for all claim or right of lien upon [the plaintiff's] or [its] Employer's property or any part thereof as a result of the furnishing of labour and/or material under the terms of the Agreement."

Pursuant to the supply agreement, the parties ultimately entered into five purchase orders for five power plant projects, including the project on Lake Road in the town of Killingly (Lake Road project). On September 27, 1999, the plaintiff issued a signed, proposed purchase order for the Lake Road project (Lake Road purchase order), to the defendant. The Lake Road purchase order provided: "Please indicate your acceptance of this order subject to the terms and conditions as shown on the face and reverse side and the required shipping schedule by signing after the words 'accepted by' and returning this acknowledgement . . . ." The plaintiff also appended purchase order notes and plant-related purchase conditions to the Lake Road purchase order. The purchase order notes specifically provided that, "[the Lake Road purchase order] and its integrated specifications and documents constitute the entire agreement between [the plaintiff] and [the defendant]

---

[6] Section 1 of the supply agreement defines " '[w]orks' " as "all supplies and services to be rendered by the [defendant] under the Agreement, Purchasing Order(s) and/or Documents."

and replaces all previous and actual verbal or written communications and agreements." The defendant received the Lake Road purchase order and accompanying documents on October 7, 1999. The defendant thereafter modified the terms of the Lake Road purchase order, and returned a signed, acknowledged copy to the plaintiff on October 15, 1999.[7]

By the summer of 2000, the parties had commenced arbitration to resolve a dispute regarding the Lake Road project. Thereafter, on February 12, 2002, the defendant recorded a mechanic's lien against the property on which the Lake Road project was to be constructed to secure payment for labor, material and services in the amount of $17,004,142.82. The plaintiff then posted a surety bond in the amount of $20,400,000 as a substitute for the lien and, pursuant to § 49-37 (b) (1),[8] filed an application in the Superior Court to dissolve or reduce the bond. The defendant moved to stay the plaintiff's application to dissolve or reduce the bond pursuant to General Statutes § 52-409,[9] until resolution of the

---

[7] In its letter of acknowledgment, the defendant noted that although the Lake Road purchase order was dated September 27, 1999, it had not been received until October 7, 1999, and therefore, by returning its acceptance on October 15, 1999, the defendant was still within the ten day period for responding set forth in the purchase order notes.

[8] General Statutes § 49-37 (b) provides in relevant part: "Whenever a bond has been substituted for any lien pursuant to this section:

"(1) The principal or surety on the bond, if no action to recover on the bond is then pending before any court, may make application, together with a proposed order and summons, to the superior court for the judicial district in which the action may be brought, or to any judge of the court, that a hearing be held to determine whether the lien for which the bond was substituted should be declared invalid or reduced in amount. . . ."

[9] General Statutes § 52-409 provides: "If any action for legal or equitable relief or other proceeding is brought by any party to a written agreement to arbitrate, the court in which the action or proceeding is pending, upon being satisfied that any issue involved in the action or proceeding is referable to arbitration under the agreement, shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement, provided the person making application for the stay shall be ready and willing to proceed with the arbitration."

pending arbitration. The trial court granted the stay as to the claim for reduction, but denied the stay as to the requested dissolution of the bond.[10] The trial court also ordered further memoranda and oral argument regarding whether the defendant effectively had waived its right to assert a mechanic's lien through the lien waiver provision contained in § 19.2 of the supply agreement.

At oral argument before the trial court, the plaintiff claimed that the defendant, by the express terms of the lien waiver provision, had waived its right to file a mechanic's lien. The defendant maintained that § 42-158*l* (a), which applies to construction contracts entered into on or after October 1, 1999, rendered the lien waiver provision "void and of no effect." The trial court concluded that, because the agreement between the parties was established on October 15, 1999, when the defendant returned the acknowledged Lake Road purchase order, § 42-158*l* (a) did apply and rendered the lien waiver provision "void and of no effect." In reaching this conclusion, the trial court refused to admit evidence of conduct that had occurred prior to the defendant's acceptance of the Lake Road purchase order pursuant to the parol evidence rule. Accordingly, the trial court denied the plaintiff's application to dissolve the bond and rendered judgment in favor of the defendant.[11]

The plaintiff appealed from the trial court's judgment to the Appellate Court. We thereafter transferred the

---

[10] Following the trial court's filing of a memorandum of decision on the defendant's motion to stay, the defendant requested a clarification of the decision. The trial court granted this motion and thereafter issued a memorandum of decision on the motion for clarification.

[11] We note that, although the trial court, in its memorandum of decision, concluded that "the plaintiff's application to discharge the defendant's mechanic's lien is denied," because the plaintiff had posted a bond as a substitute for the mechanic's lien, the trial court, in actuality, denied the plaintiff's application to dissolve the bond.

appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

## I

The plaintiff's first claim on appeal is that the trial court applied an incorrect burden of proof to its application to dissolve the bond substituted for the mechanic's lien. Specifically, the plaintiff claims that the trial court improperly bypassed the threshold inquiry into whether the defendant, as the obligee of the bond, could establish probable cause to sustain the validity of the lien as required by § 49-37 (b) (5),[12] and instead proceeded directly to the merits of the plaintiff's case, that is, whether the plaintiff could prove by clear and convincing evidence that the bond should be dissolved. The defendant claims that the plaintiff cannot raise this issue on appeal because it waived the probable cause inquiry before the trial court. We agree with the defendant and therefore do not consider the merits of this claim.

Section 49-37 (b) (5) provides in relevant part: "Upon the hearing held on the application or motion set forth in this subsection, *the obligee on the bond shall first be required to establish that there is probable cause to sustain the validity of the lien.* Any person entitled to notice under subdivision (1) of this section may appear, be heard and prove by clear and convincing evidence that the validity of the lien should not be sustained . . . ." (Emphasis added.) In the present case, the plaintiff expressly waived the probable cause showing when, through counsel, it made the following statement to the trial court: "I think that [§ 49-37 (b) (5)] requires that [the defendant] would have the burden of proof in a hearing like this, since they would have to show probable cause for the validity of the lien. *I*

---

[12] See footnote 2 of this opinion.

*don't think that that's necessary to go through that formality."* (Emphasis added.)

Moreover, when evidence was presented to the trial court on the plaintiff's application to dissolve the bond, the plaintiff presented its witnesses first, before the defendant. Had the burden to establish probable cause been an issue at that point in the proceeding, the defendant would have presented evidence first to establish probable cause to sustain the mechanic's lien before the plaintiff presented its evidence challenging its validity. Accordingly, we conclude that the plaintiff waived the probable cause showing required under § 49-37 (b) (5), and we therefore decline to review the plaintiff's first claim.

II

The plaintiff next claims that the trial court improperly applied the parol evidence rule by excluding evidence that would have established, by clear and convincing evidence, that the parties' contract became effective prior to October 1, 1999. Specifically, the plaintiff claims that, because the parties' agreement was ambiguous as to its effective date, the trial court improperly failed to consider extrinsic evidence of the parties' conduct preceding the defendant's acceptance[13] of the Lake Road purchase order on October 15, 1999.[14] The defendant contends that both the supply agreement and Lake Road purchase order unambiguously estab-

---

[13] We note that the parties, through the supply agreement, define " '[a]cknowledgement' " as the defendant's "final acceptance of the Purchase Order(s)." Therefore, because, in this case, "acknowledgement" is synonymous with "acceptance," we refer to the defendant's October 15, 1999 letter acknowledging the Lake Road purchase order as an acceptance.

[14] The plaintiff also claims that the extrinsic evidence should have been admitted because it merely modified an implied in fact contract that already was contemplated by the parties' conduct. Because the plaintiff did not distinctly raise this claim at trial, we decline to review it on appeal. See Practice Book § 60-5.

lished that a contract was formed when the defendant accepted the Lake Road purchase order on October 15, 1999, and, therefore, in the absence of any ambiguity, extrinsic evidence of conduct is inadmissible. We agree with the defendant that there was no ambiguity as to the effective date of the contract, and that the trial court properly excluded extrinsic evidence concerning the date when the contract was formed.

The following additional facts are necessary to resolve this issue. At trial, the plaintiff offered the following documents as evidence of conduct between the parties during August and September, 1999, as proof that a contract was formed prior to October 1, 1999.[15] On August 27, 1999, the plaintiff issued to the defendant a limited notice to proceed, a notice specifically contemplated in the supply agreement. This document directed the defendant "to commence immediately with engineering, design and procurement of long lead time items and assignment of production slots . . . for the . . . Lake Road project." The parties subsequently conducted a "kick-off meeting," the minutes of which were entered into evidence, at which they discussed the start of engineering, as well as related technical issues. Following the meeting, the plaintiff issued a second limited notice to proceed. The defendant then issued a progress report on the Lake Road project covering the months of September and October, 1999. Finally, on October 12, 1999, the defendant submitted an invoice to the plaintiff for work completed in the amount of $1,886,550. Upon reviewing these proffers after the hearing, the trial court concluded that "[t]his evidence of conduct is contrary to the terms of [the] parties' written agreement. Accordingly, it is inadmissible under the parol evidence rule."

---

[15] At the hearing on the application, the trial court admitted as full exhibits for consideration by the court all of the documents offered by the plaintiff. The trial court subsequently determined in its memorandum of decision that the documents were inadmissible under the parol evidence rule.

"Ordinarily, [o]n appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. . . . Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion. . . . Because the parol evidence rule is not an exclusionary rule of evidence, however, but a rule of substantive contract law . . . the [defendant's] claim involves a question of law to which we afford plenary review." (Citations omitted; internal quotation marks omitted.) *Harold Cohn & Co.* v. *Harco International, LLC*, 72 Conn. App. 43, 48, 804 A.2d 218, cert. denied, 262 Conn. 903, 810 A.2d 269 (2002).

The parol evidence rule "is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. . . .

"The parol evidence rule does not of itself, therefore, forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement

which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud. . . . These recognized exceptions are, of course, only examples of situations where the evidence (1) does not vary or contradict the contract's terms, or (2) may be considered because the contract has been shown not to be integrated; or (3) tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing founded in mistake or fraud." (Citations omitted; internal quotation marks omitted.) *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 780–81, 653 A.2d 122 (1995). Generally, however, "we continue to adhere to the general principle that the unambiguous terms of a written contract containing a merger clause may not be varied or contradicted by extrinsic evidence." *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 503, 746 A.2d 1277 (2000).

With these principles in mind, we turn to the question of whether the contract between the plaintiff and the defendant was in fact ambiguous with regard to the date when the contract was formed. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves

no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) Id., 498.

Our review of the supply agreement and the Lake Road purchase order leads us to conclude that there was no ambiguity as to the effective date of the contract. The supply agreement sets forth the procedures necessary to consummate a binding contract, and unambiguously indicated that the parties did not intend to enter into a contract for the plaintiff to purchase equipment from the defendant until the defendant accepted a purchase order issued by the plaintiff. This is evident from § 6.1 of the supply agreement, which provides that "[t]his Agreement *shall not imply or create an obligation* for both Parties to enter into any Purchase Order(s)." (Emphasis added.) Moreover, § 6.1 establishes that, in the future, the plaintiff "shall have the right to accept or reject any proposal made by the [defendant] . . . ." Additionally, the supply agreement precisely defines each relevant term used in § 6.1 as they relate to each other. The definitions of both " '[a]greement' " and " '[a]cknowledgement' " in § 1 of the supply agreement reference "[p]urchase [o]rder(s)." Significantly, "[p]urchase [o]rder" is defined in § 1 as "*the Document . . . by which the Agreement come[s] into effect and force.*" (Emphasis added.) Finally, § 5.1 of the supply agreement establishes the priority of documents in the event of an inconsistency with regard to their terms. Notably, that section provides that the purchase order takes precedence over all other documents, including the supply agreement.

Thus, it is apparent from the terms of the supply agreement that both parties intended that a subsequent purchase order, and not the supply agreement, would form the legally binding contract between them. In

other words, the supply agreement unequivocally indicates that the parties did not intend to enter into a binding contract until such time as the plaintiff issued a purchase order and the defendant accepted that purchase order.

We turn next to the specific language of the Lake Road purchase order issued by the plaintiff and accepted by the defendant on October 15, 1999. The Lake Road purchase order explicitly directed the defendant to "indicate your *acceptance* of this order . . . by signing after the words 'accepted by' and returning this acknowledgement . . . ." (Emphasis added.) We reiterate that the defendant unequivocally accepted the Lake Road purchase order issued by the plaintiff in its letter of October 15, 1999. It is axiomatic that acceptance of an offer creates a valid contract. *Bridgeport Pipe Engineering Co.* v. *DeMatteo Construction Co.*, 159 Conn. 242, 246, 268 A.2d 391 (1970). Thus, we agree with the trial court that the parties formed an agreement on October 15, 1999, when the defendant accepted the Lake Road purchase order.

We further agree with the trial court that the Lake Road purchase order as accepted by the defendant on October 15, 1999, constituted the entire agreement between the parties. The purchase order notes provided that, "[the Lake Road purchase order] and its integrated specifications and documents constitute the *entire agreement* between [the parties] and *replaces all previous and actual verbal or written communications and agreements*." (Emphasis added.) Accordingly, we conclude that the language of this merger clause is conclusive evidence of the parties' intent to create a fully integrated agreement. Therefore, because we determine that the integrated agreement contains no ambiguity, we further conclude that the trial court properly deter-

mined that extrinsic evidence of conduct was inadmissible to vary the effective date of the agreement.

The judgment is affirmed.

In this opinion the other justices concurred.