566 NEW PARK ASSOCIATES, LLC, ET AL. *v.* JESSE BLARDO ET AL.
(AC 25628)

Flynn, C. J., and Schaller and Gruendel, Js.

---

804

Argued March 21—officially released October 3, 2006

*J. Anthony Doran*, for the appellants (plaintiffs).

*Michael A. Georgetti*, for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiffs, 566 New Park Associates, LLC (New Park), and Advantage Automotive, Inc. (Advantage), appeal from the judgment of the trial court rendered in favor of the defendants, Jesse Blardo and JTJ Builders, LLC (JTJ). New Park also appeals from

the judgment rendered in favor of JTJ on JTJ's counter-claim. The plaintiffs claim that the court improperly concluded that (1) a certain document was not part of the parties' construction contract and (2) the plaintiffs were in breach of the contract.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiffs' appeal. In the present action, the plaintiffs are New Park, the owner of real property at 566 New Park Avenue in West Hartford, and Advantage, an automotive repair business operated on the premises. The defendants are JTJ, a general contracting company, and Blardo, the sole owner and president of JTJ.

On March 23, 2000, New Park entered into a construction contract with JTJ that provided that JTJ would serve as a contractor for certain improvements and additions to New Park's property. The parties utilized a standard form agreement created by the American Institute of Architects (AIA) and known as AIA Document A105 (A105). All the relevant parties signed A105.

A105 referred to a second document, AIA Document A205 (A205), as also being a part of the contract. A205 is a four page document separated into eleven articles. It includes a number of provisions establishing the obligations of the parties and provides remedies for the failure of each party to perform. A205, however, offers

---

[1] The plaintiffs raise four claims on appeal. Specifically, they claim that the court improperly (1) concluded that a certain document was not part of the contract, (2) concluded that the plaintiffs were in breach of the contract, (3) rendered judgment in favor of the defendants on the plaintiffs' complaint and (4) rendered judgment in favor of JTJ on its counterclaim against New Park. With respect to the plaintiffs' third and fourth claims, rather than providing independent analysis, the plaintiffs' brief directs this court to the analysis of their second claim. In our view, the plaintiffs' final two claims are simply alternate phrasings of their second claim, and we treat them as such.

no place for the parties to sign the document; rather it is a list of terms. A105 directly referenced A205 on two instances. First, A105, article 1, § 1.2, provides that the contract documents included "*AIA Document A205*, General Conditions for Construction of a Small Project, current edition . . . ." (Emphasis added.) Second, A105, article 5, § 5.3, states that "[t]he contractor shall obtain an endorsement to its general liability insurance policy to cover the contractor's obligations under paragraph 3.12 of *AIA Document A205*, General Conditions of the Contract for Construction of Small Projects." (Emphasis added.)

Following the parties' execution of the contract, JTJ began work on the site. The construction encountered substantial delays, however, and in June, 2000, the parties began to exchange a series of letters discussing the reasons for the delays. As a result of the delays, the relationship between the parties deteriorated and, subsequently, Malcolm Arnold, a representative of the plaintiffs, terminated the contract, purportedly in accordance with A205, by a letter dated October 15, 2000.

Thereafter, on May 14, 2002, the plaintiffs filed a thirteen count complaint against the defendants. Counts one through seven of the complaint were directed at JTJ and alleged breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, negligence, fraudulent misrepresentation, interference with business relations and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Counts eight through twelve stated claims against Blardo, in his individual capacity, and alleged unjust enrichment, negligence, fraudulent misrepresentation, interference with business relations and violation of CUTPA. Count thirteen was also directed at Blardo and attempted to pierce the corporate veil of JTJ. On October 17, 2002, the defendants filed an answer to the complaint, and JTJ

filed a counterclaim against New Park, alleging breach of contract. Subsequently, on March 8, 2004, the plaintiffs withdrew their claims of fraudulent misrepresentation and interference with business relations against both defendants.

The trial began on January 6, 2004, and lasted seven days. At trial, the plaintiffs argued that A205 was part of the contract and that they properly terminated the contract pursuant to A205's provisions. The defendants' counsel directly challenged the proposition that the provisions of A205 permitted termination of the contract by the plaintiffs. To that end, the defendants' counsel, during his cross-examination of Arnold, requested that A205 be produced. Upon production of the document, and by agreement of the parties, A205 was admitted into evidence as a full exhibit. Counsel then proceeded to cross-examine Arnold as to what specific provisions of A205 the plaintiffs relied on in terminating the contract.

Despite A205's having been admitted as a full exhibit and Arnold's having testified as to its terms, the court, in its June 22, 2004 memorandum of decision, concluded that "[t]here was no testimony of any reliance upon A205 by the parties in reaching their agreement, and there is no such document in evidence signed or unsigned or claimed by the parties. Insofar as this trial is concerned, the document does not exist and, in the opinion of this court, AIA document A105, executed by the parties, is the sole contract between the parties."[2] The court further concluded that the defendants were at all times ready, willing and able to continue with the contract and were willing to perform extra work. In the court's view, the defendants were prevented from proceeding to completion of the contract because of

[2] The court reiterated later in its memorandum of decision that A205 "is not a part of [the] contract . . . ."

the plaintiffs' breach.[3] Specifically, the court found that the plaintiffs breached the contract by "changing the terms of payment without agreement . . . ordering the defendants off the job and finally, by the letter of October 15, 2000, terminating the contract." With respect to JTJ's counterclaim, the court concluded that in light of its findings that New Park was in breach of the contract, JTJ was entitled to judgment on its counterclaim. Consequently, the court rendered judgment in favor of the defendants on the complaint and in favor of JTJ with respect to the counterclaim. This appealed followed.

I

The plaintiffs first claim on appeal is that the court improperly found that A205 was not a part of the contract. We agree.

A

In support of this claim, the plaintiffs argue that the court improperly found that A205 was not in evidence and that this improper finding contributed to the court's conclusion that A205 was not part of the contract. Accordingly, we address, at the outset, whether the court improperly concluded that A205 was not in evidence.

As a preliminary matter, we set forth the relevant standard of review. "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are

---

[3] Specifically, the court found that "[t]he essence of the plaintiffs' case is that the defendants were the cause of the admitted lengthy delays in their performance and that they failed to complete the contract. . . . [T]he court is of the opinion that the defendants were ready, willing and able at all times, to proceed with the contract . . . but were prevented from performing as rapidly as anticipated because of [delays caused by the plaintiffs' representative]."

legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set forth in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Rollar Construction & Demolition, Inc.* v. *Granite Rock Associates, LLC*, 94 Conn. App. 125, 130, 891 A.2d 133 (2006).

In its memorandum of decision, the court expressly concluded that A205 was not in evidence. Specifically, it stated that there was "no such document in evidence signed or unsigned . . . ." The record, however, belies this conclusion. As noted previously, A205 was introduced as a full exhibit, and testimony was offered as to its terms.[4] In light of the record in the present case, we conclude that the court improperly determined that A205 was not in evidence.

B

Having concluded that the court improperly determined that A205 was not in evidence, we now turn to the plaintiffs' claim that the court improperly found that A205 was not part of the contract.

At the outset we set forth the relevant standard of review. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties

---

[4] The defendants argue that only a copy of an A205 form was admitted as an exhibit and, therefore, the court's conclusion that A205 was not introduced at trial was proper. This argument, for which the defendants offer no supporting case law or transcript citation, ignores the fact that A205 is merely a supplemental list of contract terms and did not bear any date or signature. Consequently, we see no distinction in the present case between a copy of A205 and the original A205.

intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Goldberg* v. *Hartford Fire Ins. Co.*, 269 Conn. 550, 559–60, 849 A.2d 368 (2004). There being definitive contract language in the present case, we address the present issue as a question of law. When the court draws conclusions of law, our review is plenary and we must decide whether the conclusions are legally and logically correct and whether there is support for them in the record. See *Issler* v. *Issler*, 250 Conn. 226, 236, 737 A.2d 383 (1999).

"[A] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Poole* v. *Waterbury*, 266 Conn. 68, 87–88, 831 A.2d 211 (2003).

"Generally, incorporation by reference of existing documents produces a single contract which includes the contents of the incorporated papers. Where . . . the signatories execute a contract which refers to another instrument in such a manner as to establish that they intended to make the terms and conditions of that other instrument a part of their understanding,

the two may be interpreted together as the agreement of the parties. . . . The documents incorporated need not be attached to the contract nor signed or initialed unless the contract so requires. . . . 17A C.J.S., Contracts, § 327 (2)." (Citations omitted, internal quotation marks omitted.) *Randolph Construction Co.* v. *Kings East Corp.*, 165 Conn. 269, 275–76, 334 A.2d 464 (1973); see also *Batter Building Materials Co.* v. *Kirschner*, 142 Conn. 1, 7, 110 A.2d 464 (1954).

In the present case, the language of the contract clearly and unambiguously refers to A205 as part of the contract.[5] As stated previously, A105, article 1, § 1.2, expressly states that "[t]he Contract Documents consist of . . . *AIA Document A205*, General Conditions of the Contract for Construction of a Small Project, current edition . . . ." (Emphasis added.) Furthermore, article 5, § 5.3, provides that "[t]he contractor shall obtain an endorsement to its general liability insurance policy to cover the contractor's obligations under paragraph 3.12 of *AIA Document A205*, General Conditions of the Contract for Construction of Small Projects." (Emphasis added.)

We cannot strain ourselves to import ambiguity into the words of this contract.[6] See *Morgenbesser* v. *Aquarion Water Co.*, 276 Conn. 825, 829, 888 A.2d 1078 (2006).

---

[5] The defendants argue that A205 was never given to them and, therefore, they could not have intended to incorporate it into the contract. The contract was clear that A205 was being incorporated by reference. It was the defendants' responsibility, therefore, to become familiar with all the terms of the contract, including terms incorporated by reference. Consequently, the defendants are precluded from now arguing that these terms are not part of the contract on the ground that they did not read all of the terms of the contract before assenting to it. See *Batter Building Materials Co.* v. *Kirschner*, supra, 142 Conn. 7 ("a party [is not] allowed, in the absence of accident, fraud, mistake or unfair dealing, to escape his contractual obligations by saying . . . that he did not read what was expressly incorporated as specific provisions of the contract into which he entered").

[6] The defendants also argue that the court, after considering all the testimony, was free to make its own determination as to whether A205 was intended to be incorporated by reference into the contract. We disagree with this contention.

Accordingly, we conclude that the court improperly determined that A205 was not part of the contract.

## II

The plaintiffs next claim that had the court considered A205, it could not properly have concluded that the plaintiffs breached the contract. We disagree and conclude that the impropriety was harmless.

"Before a party is entitled to a new trial because of an erroneous ruling, he or she must demonstrate that the error was harmful. . . . In a civil case, the determining standard is whether the erroneous ruling would likely affect the result." (Citation omitted.) *Joblin* v. *LaBow*, 33 Conn. App. 365, 368, 635 A.2d 874 (1993), cert. denied, 229 Conn. 912, 642 A.2d 1207 (1994). "The determination of [harmful error] lies in the record." (Internal quotation marks omitted.) *Pirolo* v. *DeJesus*, 97 Conn. App. 585, 590, 905 A.2d 1210 (2006).

In the present case, the court heard testimony that the defendants were ordered off the job site on two occasions. According to Blardo, the first occasion

The parol evidence rule bars the use of extrinsic evidence, including testimony, to alter or contradict the terms of an integrated contract. See *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 277, 819 A.2d 773 (2003). It "is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme." (Internal quotation marks omitted.) *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, 269 Conn. 599, 609, 849 A.2d 804 (2004).

There is no question that A105 expressly provided for the incorporation of A205. Any testimony, therefore, regarding whether A205 was intended to be incorporated into the contract would contradict an unambiguous provision of the contract and was barred by the parol evidence rule.

occurred prior to September 28, 2000, when Arnold informed Blardo that he and his crew "were no longer welcome on the job site" and instructed them "to get [their] stuff and get off the job site." Thereafter, in late September or early October, 2000, Arnold contacted Blardo and asked if they could meet at the job site. Blardo agreed and, upon returning to the job site, he began to take various measurements. While Blardo was taking measurements, Arnold left in order to speak to the owner. Arnold subsequently returned and informed Blardo that "[t]he owner don't want you on the job site." Blardo left the premises, and by a letter dated October 15, 2000, Arnold, in his capacity as the plaintiffs' representative, wrote to the defendants' attorney and terminated the contract.

As stated previously, the court ultimately concluded that the plaintiffs breached the contract in three ways: First, by changing the terms of the contract without agreement; second, by ordering the defendants off the job site; and, finally, by the letter dated October 15, 2000, terminating the contract. The plaintiffs argue on appeal that they were justified in executing these remedies pursuant to the express provisions of A205 and, therefore, had the court properly considered A205, it could not have found that they had breached the contract.

The plaintiffs are correct that A205 does provide them with a number of remedies. A205, article 11, for example, permits the plaintiffs to terminate the contract, take possession of the site and complete the work by reasonable means, provided that the defendants (1) persistently refused or failed to supply enough skilled workers or proper materials; (2) failed to make payments to subcontractors in accordance with the respective agreements between the defendants and the subcontractors; (3) persistently disregarded laws, ordinances or regulations of a public authority; or (4) were

otherwise guilty of a substantial breach.[7] Pursuant to article 11, § 11.2.2, however, even if any or all of those conditions were satisfied, the plaintiffs were still required to consult with an architect and to provide the defendants *seven days written notice* prior to terminating the contract, taking possession of the site or completing the work by reasonable means.[8]

In the present case, the record supports a conclusion that the plaintiffs, on two occasions, took possession of the job site by ordering Blardo off the premises without providing seven days written notice of termination. Indeed, written notice of termination was not provided until the October 15, 2000 letter. Consequently, even if the court had considered A205, it could have concluded, nevertheless, that the plaintiffs breached the contract by taking possession of the job site without providing the defendants seven days written notice. We conclude, therefore, that consideration of A205 was not likely to have affected the result.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] AIA Document A205, article 11, § 11.2.1, provides: "The Owner may terminate the Contract if the Contractor: .1 persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials; .2 fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors; .3 persistently disregards laws, ordinances, or rules, regulation or orders of a public authority having jurisdiction; or .4 is otherwise guilty of substantial breach of a provision of the Contract Documents."

[8] AIA Document A205, article 11, § 11.2.2, provides in relevant part: "When any of the above reasons exist, the Owner, after consultation with the Architect, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor . . . seven days' written notice, terminate employment of the Contractor and may: .1 take possession of the site and of all materials thereon owned by the Contractor; .2 finish the Work by whatever reasonable method the Owner may deem expedient."