# THOMAS CAPPO ET AL. *v.* MARK R. SUDA, JR., ET AL.
## (AC 31547)

Gruendel, Beach and Dupont, Js.

Argued October 12, 2010—officially released January 11, 2011

*Peter M. Nolin*, with whom, on the brief, was *Susan R. Briggs*, for the appellants (defendants).

*Louis Ciccarello*, for the appellee (plaintiff).

*Opinion*

DUPONT, J. The defendants, Mark R. Suda, Jr., and Michelle L. Suda, appeal from the rendering of summary

judgment in favor of the plaintiffs, Thomas Cappo and certain other neighbors who reside on Ox Yoke Lane in Norwalk,[1] on both the plaintiffs' complaint and the defendants' counterclaim. The court rendered summary judgment in favor of the plaintiffs on their complaint in which they sought to enforce a restrictive covenant through a temporary and permanent injunction preventing the defendants from resubdividing the defendants' property and from constructing a second dwelling. The court also rendered judgment in favor of the plaintiffs on the counterclaim in which the defendants sought a declaratory judgment that the restriction on their property had been extinguished and that they may be permitted to proceed with their resubdivision and construction.

The defendants, in both the answer to the plaintiffs' complaint and in the allegations of their counterclaim, admit that the properties belonging to the plaintiffs and the defendants are depicted on a "Map Showing Section Two of Cricklewood, Norwalk . . . as Map No. 3714" (Section Two) and admit that their deed contains a reference to restrictive covenants as set forth in volume 416 at page 118 of the Norwalk land records. This restriction, as provided in their warranty deed, states: "Said tract is subject to the following restrictions: 1. No more than one dwelling together with an attached garage shall be constructed thereon."[2]

---

[1] The plaintiff appellees include the following residents of Ox Yoke Lane: Thomas Cappo and Marcia Cappo, who reside at number sixteen, Gary Brandman, who resides at number five, Lucy P. Ely, who resides at number two, Edith Geiser, who resides at number eight, Henry Holowinko and Mary Ann Holowinko, who reside at number three, and Rosemary Andersen, who resides at number fourteen. The total number of lots in the Ox Yoke Lane subdivision is thirteen. Counting the defendants, the owners of seven lots are parties to this litigation, whereas six owners are not parties.

[2] Prior to the plaintiffs' action for injunctive relief, the defendants sought and received approval from the Norwalk planning commission to resubdivide their property and to build a second dwelling on their subdivided property. The defendants do not claim that the permission from the planning commission can override the restrictive covenant in their deed. A landowner who

"In general, restrictive covenants fall into three classes: (1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme; and (3) covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land which he retains. . . . With respect to the second class of covenants, any grantee under such a general or uniform development scheme may enforce the restrictions against any other grantee."[3] (Citations omitted; internal quotation marks omitted.) *Contegni* v. *Payne*, 18 Conn. App. 47, 51–52, 557 A.2d 122, cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989). It is undisputed that the restrictive covenants pertaining to the plaintiffs' and defendants' properties are in the second class of covenants.

The issues to be resolved on appeal are (1) whether the restrictive covenant on all the properties located in Section Two, including those of the parties, has been abandoned and (2) whether the trial court had the jurisdiction to render summary judgment on the complaint seeking injunctive relief and the counterclaim seeking

seeks a perpetual restriction on the use of subdivided property may limit development by the use of restrictive covenants. A municipal commission, however, does not have the power to deny an application for subdivision approval based on such a covenant if the application otherwise meets the requirements of the local subdivision regulations or the enabling statutes. *Moscowitz* v. *Planning & Zoning Commission*, 16 Conn. App. 303, 311 n.8, 316, 547 A.2d 569 (1988).

[3] "The doctrine of the enforceability of uniform restrictive covenants is of equitable origin. The equity springs from the presumption that each purchaser has paid a premium for the property in reliance upon the uniform development plan being carried out. While that purchaser is bound by and observes the covenant, it would be inequitable to allow any other landowner, who is also subject to the same restriction, to violate it." *Contegni* v. *Payne*, 18 Conn. App. 47, 52, 557 A.2d 122, cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989).

declaratory relief when notice was not given to interested parties. We conclude that the court had jurisdiction and affirm the judgment of the court.

I

ABANDONMENT OF THE RESTRICTIVE COVENANT

The defendants claim that, although a restrictive covenant that prohibits resubdivision for the purpose of building an additional dwelling was contained in their deed, that restriction has been abandoned because resubdivisions have occurred in surrounding properties, which the defendants contend are part of the same subdivision as their property. The parties reside in a subdivision referred to as Section Two. All thirteen of the lots in Section Two have been developed, and none of the lots contain more than one dwelling. Two other parcels originating from the same grantor and developed into abutting subdivisions exist, namely, "Cricklewood" and "Bow End Road." Resubdivisions have occurred in Cricklewood. The court held that the three subdivisions, Section Two, Cricklewood and Bow End Road, were not a single general plan of development and, accordingly, rendered summary judgment in favor of the plaintiffs. We agree that the subdivisions are separate and not part of one plan of development and, therefore, agree with the court that the Section Two restrictions have not been extinguished or abandoned as a result of resubdivisions that occurred in Cricklewood.

A review of the record indicates that the following facts are not in dispute. The estate of Herman Aaron (estate) was the original common grantor of the land that became the Cricklewood, Section Two, and Bow End Road subdivisions. In 1950, the estate along with Benjamin B. Kirkland, Jr., and Fred L. Spitzer submitted Cricklewood for subdivision approval to the planning commission and thereafter to the common council of

the city of Norwalk. Cricklewood involved a fourteen lot subdivision of properties, as delineated on map 3364, and consisted of properties ranging in size from 1.36 to 3.328 acres. Six of the fourteen parcels in Cricklewood were created from over nine acres of property conveyed by the estate to Kirkland and Spitzer. The deed conveying the property from the estate to Kirkland and Spitzer required that the tract "shall be subdivided into not more than six building lots any one of which shall not be less than one acre in area" and that "[n]o building other than a one-family dwelling house, together with such outbuildings as are usual and incidental thereto shall be erected on any lot until the exterior plans thereof have been approved . . . . This provision shall terminate as of January 1, 1975." For at least four other plots in Cricklewood, the estate released the owners from whatever deed restrictions the estate had placed on their property so that resubdivisions were permitted on those plots. A number of lots in Cricklewood have been resubdivided, but none of those resubdivisions created a lot that is smaller than one acre.

Cricklewood abuts the Section Two development. The following facts, as stated by the court in its memorandum of decision, are supported by the record. Section Two, as delineated on map 3714, "contains thirteen separate lots each specifically defined as to acreage and boundaries. The properties range in size from 1.02 to 1.55 acres. This subdivision was submitted for approval by the executors of the [estate] in 1952. . . . The subdivision was recorded in the Norwalk land records on June 12, 1952. Each and every tract on map . . . 3714 was sold subject to the restriction of 'no more than one dwelling together with an attached garage shall be constructed thereon.' Since 1952, all of the lots have been developed, but none of the lots contains more than one dwelling."

The third area involving property of the estate, as delineated on map 3713, is a ten lot subdivision on Bow End Road. The estate submitted this application in 1952. It was approved by the Norwalk common council on June 10, 1952. These ten lots range in size from 0.55 to 0.859 acres, and each was sold subject to a restrictive covenant that provided that only "one private residence for one family only, and the usual private garage or structure appurtenant to said private residence" shall be erected or maintained thereon. None of the lots on map 3713 has been resubdivided.

On the basis of these undisputed facts, the court concluded that the defendants' position that the Section Two subdivision should be developed in accordance with the Cricklewood development, an abutting subdivision, "is simply not consistent with the admitted facts and documentation provided to the court. Even recognizing that there are lots in the abutting Cricklewood subdivision that have been resubdivided, there are no facts other than supposition on the part of the defendants that there was an intent to allow the covenants of the Cricklewood subdivision to direct development on a separately approved subdivision, with different owners, different restrictions, different approvals and different lot size."

We set forth our standard of review and relevant principles of law. "The standard of review of a trial court's decision to grant summary judgment is well established. [W]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A material fact is a fact which will make a difference in the result of the case. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function

is not to decide issues of material fact, but rather to determine whether any such issues exist. . . .

"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) *Vestuti* v. *Miller*, 124 Conn. App. 138, 142–43, 3 A.3d 1046 (2010).

When uniform covenants are contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme, any grantee under such a general or uniform development scheme may enforce the restrictions against any other grantee. *Contegni* v. *Payne*, supra, 18 Conn. App. 51–52. The owner's intent to develop the property under a common scheme is evidenced by the language in the deeds. Id., 52. "[T]he determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . Thus, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences." (Citations omitted; internal quotation marks omitted.) Id., 51.

"There are several factors that help to establish the existence of a common grantor's intent to develop the land according to a uniform plan. These factors include (1) the common grantor's selling or stating an intention to sell an entire tract of land, (2) the common grantor's exhibiting a map or plot of the entire tract at the time of the sale of one of the parcels, (3) the actual development of the tract in accordance with the restrictions,

and (4) a substantial uniformity in the restrictions imposed in the deeds executed by the common grantor." Id., 53; 9 R. Powell, Real Property (2007) § 60.03 [4], pp. 60-28 through 60-28.1. "The factors that help to negate the presence of a development scheme are: (1) the grantor retains unrestricted adjoining land; (2) there is no plot of the entire tract with notice on it of the restrictions; and (3) the common grantor did not impose similar restrictions on other lots. 9 R. Powell, supra, [§ 60.03 [5], pp. 60-28.2 through 60-29]." *DaSilva* v. *Barone*, 83 Conn. App. 365, 372, 849 A.2d 902, cert. denied, 271 Conn. 908, 859 A.2d 560 (2004).

Once a common scheme has been established, it is possible to find that the restrictive covenants are not enforceable because they have been abandoned. "[W]hen presented with a violation of a restrictive covenant, the court is obligated to enforce the covenant unless the defendant can show that enforcement would be inequitable. . . . [A] [c]hange in circumstances . . . may justify the withholding of equitable relief to enforce a covenant. . . . Such a change in circumstances is decided on a case by case basis, and the test is whether the circumstances show an abandonment of the original restriction making enforcement inequitable because of the altered condition of the property involved." (Citations omitted; internal quotation marks omitted.) *Grady* v. *Schmitz*, 16 Conn. App. 292, 301–302, 547 A.2d 563, cert. denied, 209 Conn. 822, 551 A.2d 755 (1988). Any such change in conditions must be so substantial so as to frustrate completely the intent of the original covenant so that it would be inequitable to enforce it. *Shippan Point Assn., Inc.* v. *McManus*, 34 Conn. App. 209, 216, 641 A.2d 144, cert. denied, 229 Conn. 923, 642 A.2d 1215 (1994). Such a change in circumstances includes repeated violations of the restrictions without effective action to enforce them. See id.

We first ask whether the plaintiffs met their burden to obtain summary judgment on their complaint seeking to enjoin construction based on the restrictive covenants found in the parties' deeds. The defendants admitted that the thirteen parcels in Section Two were developed under a common scheme using substantially uniform restrictions.[4] Excepting the defendants' property, none of the owners of the parcels in Section Two have sought or received resubdivision approval, nor have repeated violations of the restrictions occurred in Section Two. Thus, the deed restrictions have not been abandoned. The plaintiffs met their burden to obtain summary judgment by demonstrating the absence of any genuine issue of material fact and showing, as a matter of law, that they were entitled to enjoin the defendants from resubdividing their lot and building a second dwelling in contravention of the restrictive covenant.

The next issue to be resolved is whether the defendants raised a genuine issue of material fact that Section Two was developed according to a common scheme that includes Cricklewood and Bow End Road. The defendants claim substantial uniformity exists between the restrictions imposed in the deeds executed by the common grantor for both Section Two and Cricklewood. This claim is not supported by the record. All thirteen parcels in Section Two were sold subject to the restriction that "[n]o more than one dwelling together with an attached garage shall be constructed thereon." Six of the fourteen Cricklewood parcels were subject to a restriction that provided that "[n]o building

---

[4] Moreover, the development in Section Two meets the four factors outlined in *Contegni* v. *Payne*, supra, 18 Conn. App. 53. The common grantor submitted the subdivision map for Section Two for approval in 1952. Since 1952, all of the lots have been developed. Each and every tract was sold subject to the restriction of "[n]o more than one dwelling together with an attached garage shall be constructed thereon." None of the lots contains more than one dwelling.

other than a one-family dwelling house, together with such outbuildings as are usual and incidental thereto shall be erected" and also provided that "[t]his provision shall terminate as of January 1, 1975." There is no provision to terminate a similar restriction in the Section Two subdivision. Furthermore, there was undisputed evidence that the estate released the owners of at least four other plots in Cricklewood from whatever deed restriction prohibiting resubdivision that it had placed on their property.

The defendants argue that the plaintiffs' evidence regarding Cricklewood was "incomplete" and that a few of the deeds in Cricklewood were substantially identical to those in Section Two. It was the defendants' burden to raise genuine issues of material fact as to whether the development in Cricklewood affected the development in Section Two. The defendants did not present to the trial court any evidence regarding the Cricklewood deeds. Even if they had, evidence of similar restrictions in a few plots would be insufficient to demonstrate that Cricklewood and Section Two were part of the same common plan because enforceable restrictive covenants usually involve the presence of the same or similar restrictions in *all or substantially all* of the deeds conveyed by the common grantor. See *Whitton* v. *Clark*, 112 Conn. 28, 37, 151 A. 305 (1930) (twenty of fifty-four lots with similar restrictions did not show common plan); *DaSilva* v. *Barone*, supra, 83 Conn. App. 376 (deed restriction applied to two-thirds of lots involved did not show common plan).[5] Also

[5] In addition to the differences between the deed restrictions, other undisputed evidence supports the court's conclusion that Section Two was developed independently of Cricklewood as "a separately approved subdivision, with different owners, different restrictions, different approvals and different lot size." Section Two was developed by the estate alone and approved in 1952; Cricklewood was developed by both the estate and two other parties and approved in 1950. The lots in Section Two range in size from 1.02 to 1.55 acres; the lots in Cricklewood ranged in size from 1.36 to 3.328 acres.

undermining the defendants' claim of a single common scheme is the fact that the estate did not record a single map that shows both Cricklewood and Section Two. There is no plot of the entire tract with notice on it of restrictions common to both Cricklewood and Section Two. See *DaSilva* v. *Barone*, supra, 372.

Because the defendants have not raised a genuine issue of material fact that Section Two was developed as part of a common scheme that includes Cricklewood and Bow End Road, we do not need to address the defendants' claim that evidence of resubdivisions in Cricklewood was sufficient to demonstrate that the deed restrictions in Section Two have been abandoned.[6]

Insofar as the defendants claim that the court's memorandum of decision contained factual errors, such as statements regarding the zoning requirements in Norwalk when no such evidence was presented, on the basis of our review of the record, we cannot conclude that the claimed factual errors were the bases of the court's decision.[7] Because the claimed factual errors

---

[6] Some of the lots in Cricklewood have been resubdivided, but none of the resubdivisions created a new lot that is less than one acre in area. It is difficult to understand the defendants' claim that because certain larger lots in Cricklewood were resubdivided into one acre parcels, the restrictive covenants in the Section Two deeds were abandoned, thus allowing the defendants to resubdivide their parcel into two parcels approximately one-half acre in size each.

[7] Specifically, the defendants challenge the court's statements that the development "was intended to comply with the one acre zoning requirement [that was] in effect" at the time and that "the [grantor's] intent was to create one acre zoning without an allowance for change." It is undisputed that neither party submitted evidence as to what the zoning requirements were in Norwalk at any relevant time. Our review of the record reveals that, at oral argument before the trial court, the defendants' counsel represented that a zoning change from one acre to one-half acre occurred in 1984. Presumably on the basis of this representation, the court made a few passing references to zoning in its memorandum of decision.

The issue before the court, however, was whether the plaintiffs were entitled to enjoin development on the defendants' property on the basis of a restrictive covenant found in the parties' deeds. Zoning provisions are generally irrelevant to the interpretation and enforcement of restrictive covenants. See *Moscowitz* v. *Planning & Zoning Commission*, 16 Conn.

were not the bases of the court's decision, they afford no reason to disturb that decision. Furthermore, the defendants did not file a motion for rectification of any claimed factual errors of the court in accordance with Practice Book § 66-5.[8] See *Martinez* v. *Commissioner of Correction*, 105 Conn. App. 65, 69, 936 A.2d 665 (2007), cert. denied, 285 Conn. 917, 943 A.2d 475 (2008). That the defendants failed to file a motion for rectification undermines their ability to obtain a reversal of the court's decision due to those alleged errors. See id.

We agree with the trial court that the restrictions in the Section Two deeds have not been extinguished or abandoned as a result of resubdivisions that occurred in Cricklewood, and we agree that the two subdivisions were not developed under a common scheme. Thus, the defendants' claims fail.

## II

## FAILURE TO GIVE NOTICE TO INTERESTED PARTIES

The defendants also claim that the trial court lacked jurisdiction to render summary judgment on both the plaintiffs' complaint and the defendants' counterclaim. It is undisputed that, if Practice Book § 17-56 (b),[9] which

App. 303, 311 n.8, 316, 547 A.2d 569 (1988). That the defendants provided the information that they now claim it was improper for the court to rely on further undermines their ability to obtain a reversal of the court's decision on the basis of those alleged errors.

[8] Practice Book § 66-5 provides in relevant part: "A motion seeking corrections in the transcript or the trial court record or seeking an articulation or further articulation of the decision of the trial court shall be called a motion for rectification or a motion for articulation, whichever is applicable. Any motion filed pursuant to this section shall state with particularity the relief sought. . . ."

[9] Practice Book § 17-56 (b) provides in relevant part: "All persons who have an interest in the subject matter of the requested declaratory judgment that is direct, immediate and adverse to the interest of one or more of the plaintiffs or defendants in the action shall be made parties to the action or shall be given reasonable notice thereof. . . .

"The party seeking the declaratory judgment shall append to its complaint or counterclaim a certificate stating that all such interested persons have been joined as parties to the action or have been given reasonable notice

governs declaratory judgments applies, neither party joined the other six lot owners in Section Two who are not plaintiffs in this action, nor gave such lot owners notice, nor did either party join or give notice to any of the lot owners who reside in Cricklewood or in the Bow End Road developments. The defendants claim that this failure deprived the court of subject matter jurisdiction to dispose of both the defendants' counterclaim for a declaratory judgment and the plaintiffs' claim for injunctive relief. The defendants argue that this court should vacate the trial court's judgment granting the plaintiffs' motion for summary judgment and remand the case so the parties can give proper notice to those owners. We conclude that the court had jurisdiction to render judgment and that due process concerns do not require us to remand this matter.

We first set forth our standard of review when determining whether the court had jurisdiction to render summary judgment. "[W]e have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Caltabiano* v. *L & L Real Estate Holdings II, LLC*, 122 Conn. App. 751, 758, 998 A.2d 1256 (2010).

Our Supreme Court has held that "failure to notify interested persons in a declaratory judgment action does not implicate the court's subject matter jurisdiction." *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 289, 914 A.2d 996 (2007). Rather,

thereof. If notice was given, the certificate shall list the names, if known, of all such persons, the nature of their interest and the manner of notice."

a lack of such notice is a curable defect. See id.; Practice Book § 17-56 (c). Nonetheless, failure to provide notice may implicate due process concerns that would compel a court to require notice or joinder before proceeding with the action. *Batte-Holmgren* v. *Commissioner of Public Health*, supra, 289. "[A] court may refuse to proceed with litigation if a claim cannot properly be adjudicated without the presence of those indispensable persons whose substantive rights and interests will be necessarily and materially affected by its outcome. . . . Joinder of indispensable parties is mandated because due process principles make it essential that [such parties] be given notice and an opportunity to protect [their] interests by making [them] a party to the [action]. . . . *Hilton* v. *New Haven*, 233 Conn. 701, 722–23, 661 A.2d 973 (1995)." (Internal quotation marks omitted.) *Batte-Holmgren* v. *Commissioner of Public Health*, supra, 289–90.

The defendants claim that the residents of Cricklewood and the six unnoticed owners of Section Two who are not plaintiffs in this action are indispensable parties whose substantive rights and interests will be necessarily and materially affected by the outcome of this litigation. See footnote 1 of this opinion. The issue is whether we should remand this action for the purpose of joining or providing notice to those parties. We first note that the plaintiffs did not seek a declaratory ruling but, rather, sought an injunction against the defendants. Thus, the requirements of Practice Book § 17-56 do not apply to the plaintiffs' claim, and the lack of notice does not affect the court's rendering of summary judgment on the plaintiffs' complaint. Moreover, we conclude that, in the present case, the substantive rights and interests of the missing persons will not be affected by our considering whether it was appropriate for the court to render summary judgment on the defendants' counterclaim for declaratory relief. We will address separately the due process concerns related to each group.

We first discuss the interests of the residents of Cricklewood. In the defendants' counterclaim for declaratory relief, the issue before the court was whether Section Two is part of a larger plan of development that includes Cricklewood. Regardless of the outcome, the unnoticed lot owners in Cricklewood are not affected because questions relating to a claimed larger common scheme of development did not in any way affect the restrictions in their deeds. In *Mannweiler* v. *LaFlamme*, 232 Conn. 27, 34–36, 653 A.2d 168 (1995), the case relied on by the defendants, the resolution of questions regarding identical restrictive covenants was relevant to *all* the deeds *within* a single development. Here, in contrast, neither the trial court nor this court needed to resolve any question regarding the Cricklewood deed restrictions except to note how those restrictions are similar to or different from the restrictions in Section Two. Accordingly, we see no need to remand this case so that the residents of Cricklewood may be joined or afforded notice.[10]

We next discuss the interests of the six unnoticed owners of Section Two who are not parties to this action. We note that "a person who is not a party generally will not be bound by a declaratory ruling. Practice Book § 17-56 (d)." *Batte-Holmgren* v. *Commissioner of Public Health*, supra, 281 Conn. 291. "Thus, an interested person who is not notified of the action is subject only to the stare decisis impact of the judgment. If the situation of an interested person is quite similar to that of one of the parties, then the stare decisis impact on the interested person may be strong, but, because of the similarity of interests, the existing parties are likely

___

[10] To the extent that the defendants argue that the unnoticed residents of the Bow End Road subdivision, map 3713, are indispensable, we find this claim even more attenuated than that relating to the unnoticed Cricklewood residents. None of the lots on Bow End Road have been resubdivided. The defendants make no claim that the development of Bow End Road in any way impacts the development of Section Two or that the deed restrictions on the Bow End Road properties have been abandoned.

to have represented well the nonparty's interests. If, on the other hand, the interested person's circumstances are sufficiently different from those of the parties, the parties' representation of the nonparty's interests may have been weak, but the case will have less precedential effect on the interested person and any future action to which that person may be a party." Id.

In the present case, the court declined to make the declaratory ruling that the defendants sought and refused to find that the restrictive covenants that govern Section Two had been extinguished based on resubdivisions that occurred in Cricklewood because it concluded that Cricklewood and Section Two were not developed according to a single common scheme. On the basis of our careful review of the record, and our discussion in part I of this decision, we agree. The unnoticed owners in Section Two, should they ever seek to resubdivide their plots for the purpose of building a second dwelling, are subject only to the stare decisis impact of this ruling. Accordingly, we decline to remand this case so that the remaining residents of Section Two may be joined or afforded notice. We conclude that the plaintiffs were entitled to a judgment as a matter of law on both their complaint seeking injunctive relief on the basis of the deed restrictions and on the defendants' counterclaim seeking a declaratory ruling to nullify those restrictions.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] The defendants also claim that the trial court improperly granted the plaintiffs' motion for summary judgment on the defendants' counterclaim because the appropriate remedy for a failure to provide notice pursuant to Practice Book § 17-56 (c) is to strike the claim. In their motion for summary judgment on the defendants' counterclaim, the plaintiffs raised two grounds: one procedural, that the defendants failed to provide notice to all interested persons, and one substantive, that the defendants could not demonstrate that the deed restriction had been abandoned. The defendants did not respond to either of these arguments at the trial court. The court rendered summary judgment on the counterclaim on the procedural ground.

Practice Book § 17-56 (c) provides in relevant part that "no declaratory judgment action shall be defeated by the nonjoinder of parties or the failure to give notice to interested parties. The exclusive remedy for nonjoinder or failure to give notice to interested persons is by motion to strike . . . ." We conclude that the trial court erred in rendering summary judgment on the defendants' counterclaim on the ground that the defendants failed to provide notice to all interested persons. It is well established, however, that an appellate court "can sustain a right decision although it may have been placed on a wrong ground." (Internal quotation marks omitted.) *Fennelly* v. *Norton*, 103 Conn. App. 125, 142, 931 A.2d 269, cert. denied, 284 Conn. 918, 931 A.2d 936 (2007).

The court determined that Cricklewood and Section Two were not developed according to a single common scheme, nor have the Section Two restrictions been extinguished or abandoned as a result of the resubdivision of parcels in Cricklewood. We agree. Despite the court's mistaken determination that the defendants failure to provide notice to all interested persons defeated their declaratory judgment counterclaim, the court did not err in rendering summary judgment on the counterclaim.