# AMERICO D'APPOLLONIO, JR., ET AL. *v.* SARINA GRIFFO-BRANDAO ET AL.
## (AC 32187)

DiPentima, C. J., and Robinson and Flynn, Js.

Argued November 16, 2011—officially released October 2, 2012

*Jeffrey M. Sachs*, for the appellants (plaintiffs).

*Gennaro Bizzarro*, for the appellees (defendants).

FLYNN, J. The plaintiffs, Americo D'Appollonio, Jr., and Carmela L. D'Appollonio, appeal from the judgment of the trial court, rendered after a court trial, in favor of the defendants, Sarina Griffo-Brandao and her father, Pasquale Griffo, on their claims arising from the defendants' partial construction of two retaining walls in an easement area located on Griffo-Brandao's property in a residential subdivision, known as West Ridge Estates, in Rocky Hill. On appeal, the plaintiffs claim that the trial court committed error by (1) exercising subject matter jurisdiction over the controversy when all indispensable parties were not joined, (2) determining that the construction of the walls within the easement area was consistent with the easement covenants, (3) determining that the consent of the neighboring lot owners was not a prerequisite to construction of the walls within the easement area, and (4) determining that the consent of the plaintiffs to the construction of the second wall was procured. The plaintiffs additionally claim the court committed error by finding in favor of the defendants on their counterclaim—that the plaintiffs' plantings within the easement area violated Griffo-Brandao's property rights. We affirm the judgment of the trial court.

The following undisputed facts and procedural history inform our review. The plaintiffs are husband and wife who own lot 4 in the residential subdivision. The plaintiffs and Griffo-Brandao own lots abutting one another in the residential subdivision. Although the plaintiffs' lot 4 has street access to New Britain Avenue, a public highway, lot 13 does not. The easement area at issue in this case is located on lot 13, owned by Griffo-Brandao. The easement area is approximately thirty feet in width where the walls at issue were constructed, and it permits ingress and egress for lot 4 and for lots 2 and 3 owned, respectively, by Lambrine

Sideriadis and Diana Hughes.[1] Sideriadis and Hughes never were joined as parties in this action, although they did testify as witnesses at trial. The easement area lies within the northern boundary of lot 13 where it begins at West Ridge Drive and runs in a northeasterly direction before ending at lot 13. At the time of the court's decision, the easement area was paved from West Ridge Drive only to the driveway of plaintiffs' lot 4, with the remaining portion of the easement area, extending to the front of Griffo-Brandao's lot 13, remaining unpaved.

The plaintiffs and Griffo-Brandao both purchased their respective properties subject to the provisions of the "Declaration of Easements and Covenants" (easement declaration), recorded on March 9, 2004, at volume 452, page 414, of the Rocky Hill land records.

Paragraph 8 of the easement declaration, recorded in volume 452, page 416 of the Rocky Hill land records, provides that "[w]hereas, the Declarant intends on subdividing its land to the south of said Lots 2, 3 and 4, it reserves the right to solely amend this Declaration to incorporate newly created lots or reference a new subdivision map."

Paragraph 9 provides that "[t]his Declaration may be amended by the written agreement of [75] . . . percent of the owners of lots or land which utilize the easement area."

Paragraph 2 provides that the purpose of the easement area shall be for "[a] mutual driveway for passing and repassing on and over the easement area by foot or by vehicle to gain access to and from said Lots and land" and "[l]aying, installing, using, maintaining,

---

[1] The trial court describes the access easement as situated on Griffo-Brandao's lot 13 and abutting the boundary of and serving the plaintiffs' lot 4. However, it is clear from the record that the access easement also serves lots 2 and 3.

repairing or replacing . . . utilities, pavement, gravel or other improvements on or under the easement area as may reasonably be necessary . . . ."

Paragraph 5 expressly provides that no lot owner shall obstruct an easement by the parking of vehicles, erection of structures, or planting of bushes or trees. The easement declaration was amended on December 3, 2004, with express provisions incorporating lot 13 into the residential subdivision and establishing the easement area across lot 13 in favor of lots 2, 3 and 4. The amendment also expressly subjects lot 13 to the easements and covenants previously set forth in the easement declaration.

The court made the following factual findings. "The plaintiffs . . . are the owners of lot 4 and . . . Griffo-Brandao is the owner of lot 13 in [the] residential . . . subdivision. These lots abut each other with [the easement area] located for ingress and egress on lot 13 with covenants for the improving and maintenance of the easement [area] together with the liability for the proportional costs associated with the individual lot benefits received from the use of these lots . . . .

"The easement [area] at the present time is paved to the driveway of [the] plaintiffs' lot 4. The remaining portion of the easement [area] is not paved as lot 13 was not built up or improved at that time. The construction of [Griffo-Brandao's] residence is under way on lot 13 together with a driveway to the easement [area].

"[Griffo-Brandao] proposes to improve that portion of the unpaved easement [area] from the paved section ending at the plaintiffs' driveway to the driveway at lot 13. To accomplish this . . . Griffo . . . who was overseeing the construction of lot 13, obtained the necessary town permits and approvals. He also contacted lot owner Americo D'Appollonio, Jr., and obtained permission to enter onto lot 4 during construction of a concrete

retaining wall for improving the unpaved portion of the easement [area] . . . .

"The wall being constructed by the defendants along the mutual boundary of lots 4 and 13 was located on lot 13 but within the easement area. At the same time, concrete footings were being constructed on the opposite side of the easement [area] for a parallel wall. These walls would slope the paved easement [area] from the higher ground of lot 13 to the lower level of lot 4.

"This construction by the defendants within the easement [area] was permitted by and consistent with the easement covenants. The construction costs are the liability of . . . Griffo-Brandao, since the complete benefits of the easement [area] improvement is to lot 13.

"The plaintiffs have obtained a separate ingress and egress access from their lot 4 to a public highway and thus no longer use the easement [area] as a passway and have suffered no injury to their easement rights as a result of the defendants' construction activity on the easement [area].

"The plaintiffs' contention that the concrete wall being built by the defendants is an eyesore was based upon its personal appearance during the course of construction and does not indicate what the final result will be. In any case, the plaintiffs are benefitting from the construction of the wall as surface water from lot 13's higher ground has drained into [the] plaintiffs' yard and the wall will reduce surface flow onto lot 4." (Citations omitted.)

On June 9, 2009, the plaintiffs filed a complaint alleging generally that the defendants' construction of the retaining walls deprived the plaintiffs of the use of the easement area. On August 6, 2009, the defendants filed an answer generally denying liability and raised a counterclaim seeking in count one compensatory and consequential damages from the plaintiffs for causing delay

to the construction of the two retaining walls. In count two of the counterclaim, they sought an injunction against the plaintiffs to remove plantings and other obstructions from the easement area that were hostile to Griffo-Brandao's underlying title.

The plaintiffs filed an amended complaint on October 6, 2009, again alleging the defendants' construction of the two retaining walls violated paragraph 5 of the easement declaration by obstructing and preventing the plaintiffs from fully utilizing the easement area. The amended complaint, however, for the first time, alleged that the defendants' decision to raise the grade of the easement area and to place a garbage dumpster and portable toilet within the easement area violated the "Declaration of Covenants and Restrictions" (restrictive declaration). The amended complaint also reiterated a claim for a declaratory judgment determining the rights of the parties to the easement and settling title thereto in accordance with General Statutes § 47-31. The defendants never filed an answer to the plaintiffs' amended complaint, which was permitted over objection on the first day of trial, and a court trial on the merits ensued despite the absence of closed pleadings.[2]

After a court trial on the merits, the court, *Hon. Julius J. Kremski*, judge trial referee, rendered judgment in favor of the defendants on both counts of the plaintiffs' amended complaint. The court observed that the construction of the two retaining walls within the easement area was consistent with and permitted by the easement covenants and that it benefited the plaintiffs by reducing the surface flow of water onto lot 4. The court also noted that the plaintiffs had obtained a separate ingress and egress from lot 4 to a public highway which no

---

[2] Although the court allowed the trial to proceed in the absence of closed pleadings, we are not prohibited from reviewing its judgment in this appeal. See *Berlingo* v. *Sterling Ocean House, Inc.*, 203 Conn. 103, 106, 523 A.2d 888 (1987); *Rummel* v. *Rummel*, 33 Conn. App. 214, 219, 635 A.2d 295 (1993).

longer necessitates their use of the easement area as a passway and therefore had suffered no injury as a result of the construction of the retaining walls. Regarding the placement of the temporary toilet and garbage dumpster, the court concluded that they were acceptable as temporary inconveniences and that no evidence was presented to show that the defendants were made aware that the presence of these objects troubled the plaintiffs.

As to the counterclaim, the court rendered judgment in favor of the plaintiffs on the first count and in favor of the defendants on the second count. On the first count, in which the defendants claimed construction delay damages, the court's judgment was not appealed. On the judgment on the second count, from which the plaintiffs appeal, the court ordered the plaintiffs to remove all plantings and encroachments from the easement area within ninety days after which the defendants could proceed and remove the encroachments at the plaintiffs' cost.[3] This appeal followed.[4]

---

[3] The plaintiffs requested that the trial court articulate its decision. Following the court's denial of that motion, the plaintiffs, pursuant to Practice Book § 66-7, filed a motion for review with this court on October 28, 2010, to compel the trial court to issue an articulation to ensure an adequate record for appellate review. On January 5, 2011, this court granted in part the plaintiffs' motion and ordered the trial court to articulate (1) whether it found that the defendants had obtained approval for their construction from any of the other subdivision lot owners, other than Americo D'Appollonio, and, if so, from whom did they obtain such consent and (2) whether or not it made any ruling that the plaintiffs' passway rights over the easement area were extinguished, abandoned or terminated as a matter of law. On April 1, 2011, the court issued its response by answering in the negative to each requested articulation.

[4] Pursuant to Practice Book § 60-5, and Practice Book § 60-2, which provides in relevant part that a reviewing court may, "on its own motion or upon motion of any party, (1) order a judge to take any action necessary to complete the trial record for the proper presentation of the appeal," this court sua sponte ordered the trial court to specify and articulate whether all of the factual references in the "factual situation" portion of the decision were findings of fact. On April 20, 2012, the court issued the requested articulation and clarified that all of the references in the "factual situation" section were findings of fact. Furthermore, the court corrected the last

I

We commence our review by addressing first the plaintiffs' claim that the trial court lacked subject matter jurisdiction to adjudicate the dispute because Sideriadis and Hughes, the owners of lots 2 and 3, were indispensable parties who were never joined as parties to the action. We disagree with the plaintiffs and conclude that the trial court possessed the necessary subject matter jurisdiction to adjudicate all of the claims and the counterclaim brought before it. We also conclude that failure to join a party who may claim an interest does not defeat jurisdiction of the court to hear the matter unless a statute or due process mandates otherwise. We further conclude that the statutory mandate found in the quiet title statute, § 47-31, although on its face mandating joinder, is subject to an exception drawn by our Supreme Court which permits such an action to proceed in the absence of some parties. We finally conclude that the failure to join Sideriadis and Hughes did not violate their due process rights.

We begin by setting forth our well established standard of review. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport*, 275 Conn. 105, 135, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006). "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it . . . . [A] court

___

sentence on page two of its memorandum of decision from "[T]hereafter, the plaintiffs sought and received a court order enjoining further work of the walls by the defendants" to "[T]hereafter, the plaintiffs sought and never received a court order enjoining further work of the walls by the defendants."

lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." *Catrini* v. *Erickson,* 113 Conn. App. 195, 196, 966 A.2d 275 (2009).

## A

At the outset, we address the defendants' argument that the plaintiffs failed to raise their claim regarding indispensable parties at trial and that they, therefore, are barred from raising an unpreserved claim that the trial court lacked subject matter jurisdiction. We disagree. Subject matter jurisdiction is a question of law and cannot be waived or conferred by consent. *Serrani* v. *Board of Ethics,* 225 Conn. 305, 308, 622 A.2d 1009 (1993). Unlike most unpreserved claims, subject matter jurisdictional defects can be raised for the first time on appeal. *AvalonBay Communities, Inc.* v. *Orange,* 256 Conn. 557, 567 n.11, 775 A.2d 284 (2001). Subject matter jurisdiction may also be raised sua sponte by the court. *Serrani* v. *Board of Ethics,* supra, 308. The plaintiffs' claim that the trial court lacked subject matter jurisdiction therefore is properly before this court.

## B

We now turn to the plaintiffs' claim that the trial court lacked subject matter jurisdiction because Sideriadis and Hughes, as parties that maintain an interest in the easement area, were never joined in the action. We disagree.

It is clear that Sideriadis and Hughes, as property owners within the same residential subdivision and having an interest in the easement area, were never joined as parties to this action. It is well established, however, that an action cannot be defeated due to the nonjoinder or misjoinder of parties, and failure to notify or join indispensable parties does not deprive a court of subject matter jurisdiction. General Statutes § 52-108; *Batte-Holmgren* v. *Commissioner of Public Health,* 281 Conn.

277, 288–89, 914 A.2d 996 (2007); *Bauer* v. *Souto*, 277 Conn. 829, 838–39, 896 A.2d 90 (2006). Instead, the remedy for nonjoinder of parties is by motion to strike. *Bauer* v. *Souto*, supra, 839. The nonjoinder of a party will generally implicate the court's subject matter jurisdiction and require dismissal, however, if a statute mandates the naming and serving of the party. *Yellow Cab Co. of New London & Groton, Inc.* v. *Dept. of Transportation*, 127 Conn. App. 170, 176–77, 13 A.3d 690, cert. denied, 301 Conn. 908, 19 A.3d 178 (2011); *Sullivan* v. *Thorndike*, 104 Conn. App. 297, 301, 934 A.2d 827 (2007), cert. denied, 285 Conn. 907, 908, 942 A.2d 415, 416 (2008).

Our plenary review of the claims brought before the court reveals no jurisdictional defect, by nonjoinder of parties who may claim an interest in the subject matter, that implicates the trial court's subject matter jurisdiction. Only three types of relief were requested by the parties at trial, and only one of those requests for relief was a statutory action that mandated the joining of certain parties. In addition to seeking injunctive relief to remove and enjoin further construction of the retaining walls, the plaintiffs also sought a judgment quieting title under § 47-31 as a statutory action. The defendants, via counterclaim, also sought (1) injunctive relief ordering the plaintiffs to cease interference with the construction of the retaining walls and to remove plantings, landscaping and stone curbings from the easement area, (2) a declaratory judgment declaring the right of the defendants to complete the construction of the improvements within the easement area in accordance with the permits obtained from the town of Rocky Hill and (3) a finding that the plaintiffs had abandoned their right to enforce the easement as to the retaining wall.

The plaintiffs' claim that the trial court lacked subject matter jurisdiction fails because the general rule that failure to notify or to join claimed indispensable parties

does not implicate a court's subject matter jurisdiction applies to the parties' claims for injunctive and declaratory relief. See General Statutes § 52-108; *Batte-Holmgren* v. *Commissioner of Public Health*, supra, 281 Conn. 288–89; *Bauer* v. *Souto*, supra, 277 Conn. 838–39; see also *Cappo* v. *Suda*, 126 Conn. App. 1, 13–15, 10 A.3d 560 (2011) (failure to join parties who may claim interest for claims involving declaratory and injunctive relief did not deprive trial court of subject matter jurisdiction to render judgment for both claims). As mentioned previously, the only exception to this general rule is when a statute expressly mandates the naming and serving of a party. The only such statute invoked by either party in the instant matter is the plaintiffs' action to quiet title pursuant to § 47-31 (b), which mandates that the complaint "shall . . . name the [party] or [parties] who may claim the adverse estate or interest." However, our Supreme Court, despite that mandate, has established that failure to join such parties under § 47-31 does not constitute error. See *Swenson* v. *Dittner*, 183 Conn. 289, 292, 439 A.2d 334 (1981) ("[Section 47-31] requires the plaintiffs to name the person or persons who may claim [an] adverse estate or interest. . . . So that the trial court can make a full determination of the rights of the parties to the land, an action to quiet title is brought against persons who claim title to or have an interest in the land. . . . Only the parties to an action to quiet title are bound by the judgment. . . . The failure to include [parties who may claim an interest] . . . is not error because the decision to join a party in a suit to quiet title is made by the plaintiff." [Citations omitted.]) After careful review of the record, we conclude that the failure to join Sideriadis and Hughes does not implicate the court's subject matter jurisdiction.

C

Having concluded that the court possessed the necessary subject matter jurisdiction, we next must consider

whether the due process interests of Sideriadis and Hughes were violated. Although failure to join parties who may claim an interest does not generally implicate the court's subject matter jurisdiction, failure to provide notice may nonetheless implicate due process concerns that would compel a court to require notice or joinder before proceeding with the action. *Batte-Holmgren* v. *Commissioner of Public Health*, supra, 281 Conn. 289. "[A] court may refuse to proceed with litigation if a claim cannot properly be adjudicated without the presence of those indispensable [parties] whose substantive rights and interests will be necessarily and materially affected by its outcome. . . . Joinder of indispensable parties is mandated because due process principles make it essential that [such parties] be given notice and an opportunity to protect [their] interests by making [them] a party to the [action]. . . . *Hilton* v. *New Haven*, 233 Conn. 701, 722–23, 661 A.2d 973 (1995)." (Internal quotation marks omitted.) *Batte-Holmgren* v. *Commissioner of Public Health*, supra, 289–90.

We conclude that the failure to join Sideriadis and Hughes did not infringe on their due process rights. "[A] person who is not a party will generally not be bound by a declaratory ruling. . . . [A]n interested person who is not notified of the action is subject only to the stare decisis impact of the judgment. If the situation of an interested person is quite similar to that of one of the parties, then the stare decisis impact of the interested person may be strong, but, because of the similarity of interests, the existing parties are likely to have represented well the nonparty's interests." Id., 291. Sideriadis and Hughes, the unjoined owners of lots 2 and 3, had rights and interests in the easement area identical to the named parties in the present case. Both Sideriadis and Hughes and the named parties possessed title subject to the terms and provisions of both the easement

declaration and the restrictive declaration. Should Sideriadis and Hughes seek a future declaratory judgment or injunctive relief relating to similar conduct brought before the trial court in this action, they will be subject to only the stare decisis impact of this ruling. Accordingly, we decline to remand this case so that Sideriadis and Hughes may be joined or afforded notice. We conclude, as a matter of law, that the plaintiffs and defendants were entitled to judgments arising from their claims for declaratory and injunctive relief as set forth in the plaintiffs' amended complaint and in the defendants' counterclaim, respectively. See *Cappo* v. *Suda*, supra, 126 Conn. App. 16–17.

## II

Having determined that the court properly exercised jurisdiction and did not violate the due process rights of Sideriadis and Hughes, we now consider the merits of the plaintiffs' additional claims on appeal. We first consider the plaintiffs' claim that the court committed error in determining that the plaintiffs consented to the construction of the retaining walls. The plaintiffs argue that it is unclear whether the court found that they consented to the construction of both retaining walls. The plaintiffs further argue that even if the court made such a finding, it is erroneous because they did not consent to the construction of the first retaining wall as built,[5] and never consented to any construction whatsoever of a second retaining wall. We disagree with the plaintiffs that the court committed error in determining that the plaintiffs consented to the erection of both walls as constructed.

---

[5] The plaintiffs do not dispute that they consented to the construction of the first retaining wall. However, they claim that the wall, as constructed, exceeded the terms of the original agreement with one of the key differences being that the wall was ultimately installed in a different location than what Griffo had originally represented.

We first set forth our standard of review. Because this claim challenges the accuracy of the court's factual findings, our review is limited to the clearly erroneous standard. "In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . A factual finding may be rejected by this court only if it is clearly erroneous." *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 184–85, 2 A.3d 873 (2010). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Goodspeed Airport, LLC* v. *East Haddam*, 302 Conn. 70, 76, 24 A.3d 1205 (2011). "Under the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did." (Internal quotation marks omitted.) *McBurney* v. *Paquin*, 302 Conn. 359, 368, 28 A.3d 272 (2011).

We conclude that the court made a finding that the plaintiffs consented to the construction of both walls in the easement area. The following factual findings and analysis, as set forth in the court's memorandum of decision, are necessary for the clarification and resolution of this claim. On the basis of a May 4, 2009 letter (May 4 letter) sent by the plaintiffs to the defendants, which was introduced into evidence, the court found that "[a] written document was signed by Americo D'Appollonio and given to . . . Griffo . . . agreeing with

and permitting the easement construction by the defendants and to enter on [the] plaintiffs' lot 4 during construction."[6] (Citation omitted.) Our review of the May 4 letter reveals that the court's use of the word "construction" indicates that the court found that the plaintiffs acquiesced in the construction of both retaining walls. The May 4 letter states that "the *retaining walls. . .* will have to be built outside and away from [the plaintiffs'] property" and that "[i]t is [the plaintiffs'] understanding that the to-be-built retaining wall along with the footings and supports will be constructed *within the easement area.*" (Emphasis added.) The court made a similar finding, later in the memorandum of decision, when it stated: "[Griffo] . . . contacted . . . Americo D'Appollonio . . . and obtained permission to enter onto lot 4 during construction of a concrete retaining wall improving the unpaved portion of the easement [area]."

The court further found that "subsequently, the plaintiffs changed their minds and asked the defendants to delay construction," but that "[t]he [d]efendants refused pointing out that they had executed the construction contracts and the work was to begin the following day."

The court then concluded its findings as follows: "Carmela D'Appollonio . . . pointed out that as a co-owner, she had not signed the approval. She did admit that she had discussed the matter with . . . Americo

[6] We note that the court erroneously references exhibit 35 as the document in question where Americo D'Appollonio expressly grants permission to the defendants to enter onto the plaintiffs' property for the purpose of undertaking the easement construction. Exhibit 35, in fact, is a letter signed by Griffo-Brandao thanking the plaintiffs for granting their permission to allow the defendants access to the plaintiffs' property for construction of the retaining walls. This error by the court, however, is harmless. It is clear that the document the court intended to reference is exhibit B. Exhibit B is signed by Americo D'Appollonio and contains the language that the court references in its memorandum of decision.

[D'Appollonio] . . . had been to the town building offices . . . had checked the defendants' construction documents on file . . . was aware of the wall construction and . . . had not objected to [Americo D'Appollonio] representing her in [the] matter. She did . . . raise objections to the approximately six foot height of the wall and its rough appearance . . . ."

There was ample evidence at trial to support the court's finding that the plaintiffs consented to the construction of the retaining walls. During redirect examination, Carmela D'Appollonio testified that when she composed the May 4 letter, it was her intention to convey to the defendants that the retaining walls could not be built on the plaintiffs' property. When asked by counsel if she was indicating and consenting that the retaining walls could be constructed in the easement area, she answered as follows: "I was more concerned with the fact that there was a potential for part of this wall to be on our property. That's what I was trying to emphasize [in the letter]." She later testified that she composed a letter dated May 13, 2009, in which she expressed her position that she no longer agreed to the construction of the first retaining wall. Americo D'Appollonio then testified that he did not have any concerns about the construction until after the footings and forms were installed. He also testified that when he later asked Griffo to stop pouring the concrete for the wall, Griffo asked if he would pay but that he did not answer. Griffo then testified that both plaintiffs orally agreed to the construction of the two walls. Perhaps the most important testimony the court could have credited to justify its finding was that of Jean Pierre Langolis, the building official for the town of Rocky Hill, who supplemented Griffo's testimony by testifying that his department issued building permits for the construction of *two* retaining walls. Langolis further testified that these permits were issued pursuant to the

plaintiffs' consent to the construction of both walls as evidenced by the May 4 letter. The plaintiffs have therefore failed to demonstrate that the court's finding that they consented to the construction of both walls was infected by clear error.

We address next the plaintiffs' claim that they did not consent to the erection of the first retaining wall as constructed. We disagree. The plaintiffs argue that the dimensions of the constructed retaining wall differ substantially from a hand drawn sketch of the proposed wall attached to an April 24, 2009 letter authored by Griffo thanking the plaintiffs for allowing the defendants to "work from [the plaintiffs'] side of [the] property line as [the defendants] construct [their] needed retaining wall." The sketch depicts a retaining wall that is 125 feet long and 6 feet in height at its highest point. The plaintiffs claim that the wall that actually was erected was 165 feet long and 8.8 feet high at its highest point. Although the completed wall was 8.8 feet high at its highest point, the record reveals that the plaintiffs are mistaken and that the wall was only 116 feet in length. Furthermore, Griffo testified that the plaintiffs refused to sign the letter attached to the sketch thereby allowing the court to infer that they did not consent at all to the proposed dimensions indicated in the sketch. Instead, Griffo testified that the plaintiffs told him they would write and send him their own letter through which they would indicate their consent to the construction. This letter was the May 4 letter which Griffo testified he eventually received sometime thereafter. The May 4 letter makes no reference to Griffo's April 24 letter or the sketch attached thereto. Although the May 4 letter grants consent to the defendants to construct a retaining wall, it gives no instruction that the wall should be built according to any specific set of dimensions. Consequently, the plaintiffs did not sustain their burden to show that the court committed clear error

in determining that the plaintiffs consented to the erection of the first retaining wall as constructed.

## III

We turn now to the plaintiffs' claim that the court erred in its determination that the construction of both retaining walls was consistent with the easement covenants. Because we have already determined that the plaintiffs consented to the construction of both retaining walls, it is unnecessary for us to examine whether that construction was consistent with the terms of the easement covenants. Accordingly, we decline to review this claim.

## IV

We next consider the plaintiffs' claim that the court committed error in determining that consent of Sideriadis and Hughes, the other lot owners who maintained an interest in the easement area, was not a prerequisite to allow the construction of the retaining walls within the easement area. The plaintiffs raise this claim on a presumption that the court found, as a factual matter, that the plaintiffs consented to the construction of both walls. We conclude that this claim has no merit. Having already concluded, in part I of this opinion, that it was not error for the court to render judgment in the absence of Sideriadis and Hughes, we now conclude that the plaintiffs have failed to show how they were aggrieved by Sideriadis' and Hughes' absence as parties to the action. "The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully. establish that this specific personal and legal interest has

been specifically and injuriously affected by the [challenged action]." (Internal quotation marks omitted.) *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 369, 880 A.2d 138 (2005). Although it may be argued that Sideriadis and Hughes might have had an interest in the controversy that they wished to protect, their absence in this action affects only their own respective interests. The plaintiffs have not shown that any right that Sideriadis and Hughes might have to grant or to withhold consent to the construction of the walls is somehow the plaintiffs' specific, personal and legal interest. Accordingly, we decline to review this claim.

V

The plaintiffs' final claim is that the trial court committed error in determining that the plaintiffs' plantings in the easement area violated Griffo-Brandao's property rights. We disagree with the plaintiffs.

This issue arises from the second count of the defendants' counterclaim, which alleged that the plaintiffs installed and maintained plantings in the easement area that were open and hostile to Griffo-Brandao's title and were not permitted under the terms of the easement declaration. The plaintiffs concede that their plantings encroach into the easement area but dispute the court's conclusion that the plantings violated Griffo-Brandao's easement rights by creating an obstruction. Our review of the court's conclusion that the plantings violated Griffo-Brandao's easement rights involves a mixed question of fact and law. "[S]o-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . [Such questions require] plenary review by this court unfettered by the clearly erroneous standard. . . . When legal conclusions of the trial court are challenged on appeal, we must decide

whether [those] . . . conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Crews* v. *Crews*, 295 Conn. 153, 162–63, 989 A.2d 1060 (2010).

It is clear that the court based its ultimate conclusion that the plantings violated the terms of the easement declaration upon a finding that the plantings obstructed the easement area. First, the court concluded that the plaintiffs "have planted shrubs on the [easement area] in violation of the easement's terms and [in] violation of [Griffo-Brandao's] rights to the underlying title." Later, the court made a finding that the plantings obstructed the easement area when it characterized the defendants' claim as follows: "[T]he defendants seek to have the plaintiffs remove *plantings and other obstructions* from the easement area in that they are not authorized by the terms of the easement and are in fact hostile to [Griffo-Brandao's] underlying title." (Emphasis added.) Our examination of the terms of the easement declaration reveals that the court's ultimate conclusion that the plantings violated the terms of the easement was legally and logically correct given the facts found that appear in the record. Paragraph 5 of the easement declaration provides in relevant part: "No owner shall block or permit obstruction of the easement area by the . . . planting of bushes . . . or otherwise." The American Heritage Dictionary defines "block" as "to stop or impede the passage of or movement through, hinder or obstruct." American Heritage Dictionary (2d College Ed. 1985) "Obstruct" is defined by Black's Law Dictionary to mean "[t]o block up; to interpose obstacles; to render impassable; to fill with barriers or impediments, as to obstruct a road or way." Black's Law Dictionary (6th Ed. 1990). Paragraph 5 makes expressly clear that plantings within the easement area violate the easement declaration if the plantings block or obstruct the easement area. The plaintiffs

concede in their appellate brief that their plantings encroached into the easement area. Furthermore, the court heard Griffo's testimony that the plantings interfere with his ability to drive through the easement area. The court was also free to consider the fact that the entirety of the easement area crosses over Griffo-Brandao's property which it could weigh toward its finding that her property rights were violated. Accordingly, we conclude that the court properly determined that the plaintiffs' plantings violated the terms of the easement declaration because the plantings encroached on the easement area and blocked or obstructed it.

The judgment is affirmed.

In this opinion the other judges concurred.